AO 91 (Rev. 11/11) Criminal Complaint                           AUSA Anthony Chmura (312) 469-6049

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER: 25 CR 422 |
| v. | **UNDER SEAL** |
| MARIO SANTOYO | |

**FILED**
7/25/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about July 22, 2025, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 930(b) | Knowingly possessing a dangerous weapon in a Federal facility with the intent that the weapon be used in the commission of a crime |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

Matthew C. Stevenson (DPM w/ permission)
_____
MATTHEW C. STEVENSON
Special Agent, Federal Bureau of Investigation (FBI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: July 25, 2025                    _____
                                              *Judge's signature*

City and state: Chicago, Illinois        DANIEL P. McLAUGHLIN, U.S. Magistrate Judge
                                              *Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, MATTHEW C. STEVENSON, being duly sworn, state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed since August 2020.  My current responsibilities include the investigation of violent crimes, including, among others, kidnaping, bank robbery, and the apprehension of violent fugitives. Prior to my employment with FBI, I was a Chicago Police Officer for five years.

2.      This affidavit is submitted in support of a criminal complaint alleging that MARIO SANTOYO has violated Title 18, United States Code, Section 930(b). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging SANTOYO with knowingly possessing a dangerous weapon in a Federal facility, with the intent that the weapon be used in the commission of crime, in violation of Title 18, United States Code, Section 930(b), I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

## PROBABLE CAUSE

3.      There is probable cause to believe that, on July 22, 2025, at the Everett McKinley Dirksen United States Courthouse ("Dirksen Courthouse"), located at 219

S. Dearborn Street, Chicago, Illinois. SANTOYO possessed a dangerous weapon, a knife with a blade of greater than 2½ inches, in a Federal facility, with intent to use that weapon in the commission of a crime, namely: (a) failing to comply with the lawful direction of federal police officers and other authorized individuals, in violation of 41 C.F.R. § 102-74.385, and (b) disorderly or other conduct on Federal property that otherwise impedes or disrupts the performance of official duties by Government employees, in violation of 41 C.F.R. § 102-74.390(c).[1]

4.      As explained in more detail below, an individual later identified as SANTOYO entered the Dirksen Courthouse and, for several hours, held a knife to his neck while asking to speak with the Federal Bureau of Investigation, and engaged in conduct that that prevented individuals, including U.S. government employees, from entering or exiting the Dirksen Courthouse, and which ultimately led to an evacuation of the courthouse.

5.      According to information received from law enforcement personnel who witnessed certain events discussed below, my review of security video, and my conversations with other law enforcement personnel who spoke with eyewitnesses, I am aware of the following:

        a.      On July 22, 2025, at approximately 10:27 a.m., SANTOYO entered the Dirksen Courthouse lobby through the south revolving door on the Dearborn Street side of the building.

---

[1] Violations of 41 C.F.R. § 102-74.385 and 41 C.F.R. § 102-74.390(c) are punishable by "imprison[ment] of not more than 30 days" and a fine "under title 18 of the United States Code." *See* 41 C.F.R. § 102-74.450.

b.     Court Security Officer 1 ("CSO-1") is a contract employee of the U.S. Marshals Service and specially deputized while working for the Marshals Service. CSO-1 was working at the front desk in the lobby of the Dirksen Courthouse when SANTOYO entered the courthouse. CSO-1 observed SANTOYO enter the south revolving door of the courthouse and wander in the area between the front desk and the doors. CSO-1 made contact with SANTOYO from behind the partition at the front desk and asked him if he needed assistance.

c.     SANTOYO advised that he needed to talk to the FBI. CSO-1 told SANTOYO that the FBI was not at the courthouse and that he would need to go to 2111 W. Roosevelt Rd. (the address of the FBI office in Chicago) to speak with them. SANTOYO informed CSO-1 that "gangsters" or "gangbangers" were trying to kill him and that he had to talk to the FBI. In response, CSO-1 advised again that the FBI was not in the Dirksen Federal and SANTOYO walked away from CSO-1.

d.     CSO-1 watched SANTOYO walk south in the lobby toward a nonoperational door and then return to the area near CSO-1. CSO-1 advised SANTOYO that if he had no business in the building he would have to leave. SANTOYO did not comply with CSO-1's command. Instead, he walked north in the direction of the north revolving door and retrieved a knife from somewhere on his person, held it to his throat, and advised that he was going to hurt himself.

e.     CSO-1 immediately notified the Marshals Service of SANTOYO's conduct and Deputy Marshals made contact with SANTOYO and directed him to put down the knife. SANTOYO did not follow the Deputy Marshals' commands.

f.      At approximately 11:23 a.m., FBI agents arrived and began assisting the Marshals Service with attempting to get SANTOYO to put down his knife. During this time, SANTOYO remained in the lobby area of the Dirksen Building holding the knife to his throat.

g.      At approximately 7:55 p.m., law enforcement used non-lethal force and took SANTOYO into custody. SANTOYO was then treated for injuries to his neck sustained from his knife and transported to a hospital for treatment.

h.      While SANTOYO was being taken into custody, he dropped the knife that he was holding to his neck. The knife and a second one found on SANTOYO's person were seized by law enforcement, who determined that the blade of both knives exceeded 2½ inches.

i.      After he was taken into custody, SANTOYO identified himself as "Mario Santoyo" and provided his date of birth and social security number.

6.      The Dirksen Courthouse is owned by the United States federal government and is under the authority of the United States General Services Administration. Housed within the Dirksen Courthouse is the United States Court of Appeals for the Seventh Circuit, the United States Court for the Northern District of Illinois, the United States Attorney's Office for the Northern District of Illinois, the United States Bankruptcy Court for the Northern District of Illinois, and offices of other governmental agencies.

7.      While employed at the FBI, I have visited the Dirksen Courthouse, located on multiple occasions and am familiar with the appearance of the first floor

lobby. Above the front center entrance is written prominently "Everett McKinley Dirksen United States Courthouse." The text is written on the glass windows and is visible both from the outside of the building and from within the lobby. Additionally, in the lobby area located before the security screening machines are two touch screens which also display the word "courthouse" along with selection buttons reading, among other things, "court schedule" and "judges."

8.    Within the lobby of the Dirksen Courthouse, in the area of the lobby located before the security screening machines, between the two front revolving doors, is a sign indicating that "THIS BUILDING IS MANAGED BY THE U.S. GENERAL SERVICES ADMINISTRATION." Next to that sign, as depicted below, is another sign bearing a GSA logo, listing a number of GSA-related regulations:



Among the regulations listed on the sign is 41 C.F.R. § 102-74.385, which states "Persons in and on property must at all times comply with the official signs of a prohibitory, regulatory, or directory nature and with the lawful direction of Federal police officers and other authorized individuals." The text of 41 C.F.R. § 102-74.390 is also listed on the sign. Additional copies of the sign are posted in other areas of the lobby, including in the area of the lobby that precedes the secured area. Based on information from the Marshals Service, these signs were also present on July 22, 2025, before SANTOYO entered the lobby of the Dirksen Courthouse and at all times while he was present in the lobby.

9.      July 22, 2025 was a Tuesday, and during that day, there were a number of court proceedings taking place in the Dirksen Courthouse, including multiple criminal jury trials. Based on information provided to me by law enforcement officers who were present in the Dirksen Courthouse on July 22, 2025, defendant's actions impeded the work of federal employees, including by preventing employees from meeting with members of the public who were attempting to access the Dirksen Courthouse and, in some cases, preventing employees from re-entering the building during the workday. Further, based on my conversations with these law enforcement officers, I learned that non-law enforcement individuals in the building, including Government employees, were evacuated on a staggered basis during the mid-afternoon hours, further preventing employees, litigants, and members of the public from conducting routine business within the courthouse.

10.     Based on the above information, I submit there is probable cause to believe that on or about July 22, 2025, SANTOYO knowingly possessed a dangerous weapon in a Federal facility, with the intent that the weapon be used in the commission of a crime.  I therefore respectfully request that this Court issue a criminal complaint charging SANTOYO with a violation of Title 18, United States Code, Section 930(b).

FURTHER AFFIANT SAYETH NOT.

Matthew C. Stevenson (DPM w/ permission)
MATTHEW C. STEVENSON
Special Agent, Federal Bureau of
Investigation

SWORN TO AND AFFIRMED by telephone July 25, 2025.

Honorable DANIEL P. McLAUGHLIN
United States Magistrate Judge

7